DocuSign Envelope ID: 9DD31EAB-0087-49A6-95FF-E4A66CBBDE10   CBF4-25EF-4749-BA62-6F338BFF2753



1226 S 630 E | American Fork, UT 84003

# FULFILLMENT SERVICE AGREEMENT

1/19/2021

THIS FULFILLMENT SERVICES AGREEMENT (this "**Agreement**") is made and entered into as of _____ by and between _____The Funtrepreneur, Inc_____ ("**Merchant**"), and DRIVE FULFILLMENT, LLC, a Utah limited liability company ("**Drive**"). This Agreement is expressly contingent on Drive's ability to integrate with Merchant's SKUBana system following execution and delivery of this Agreement. If Drive fails to integrate its fulfillment service systems with SKUBana, in the sole judgment of Merchant, on or prior to thirty days from the mutual execution and delivery of this Agreement, then Merchant may send written notice of such determination to Drive and this Agreement shall be null and void.

Merchant is in the business of selling consumer products (the "**Products**") to end-user customers (each, a "**Customer**") online, among other related business activities.

a) Drive provides fulfillment services to its customers including warehousing, order processing, and shipping, among other related services.

b) Merchant desires to engage Drive to provide fulfillment services in connection with the sale of its Products to its Customers.

c) Drive desires to provide such services on the terms and subject to the conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Merchant and Drive hereby agree as follows:

1. **Merchant Responsibilities**. In addition to any other obligations under this Agreement, Merchant shall perform and be responsible for each of the following responsibilities promptly upon receiving Customer orders in writing:

    a) Inform Merchant's manufacturers and suppliers to deliver relevant Products directly to Drive at the following address:

    Merchant c/o Drive Fulfillment
    1226 South 630 East, Suite #1
    American Fork, Utah 84003

    b) Merchant will pay for the initial inventory to be shipped to Drive, in addition to goods being dropped shipped directly from the supplier.

    c) Obtain any and all necessary export approvals, including registration of the Products under the Export Act for shipments to Customers outside the United States of America.

2. **Drive Responsibilities**. Drive shall perform and be responsible for each of the following responsibilities:

    a) Receive Products from Merchant's suppliers into Drive's warehouse in their "received" condition; verify that the quantity and type of Products received conform to the shipping invoice; promptly notify Merchant by email of any shortages or damages in any shipment received; and email the receiving document to Merchant.  If any Product that Merchant causes to be shipped to Drive arrives damaged or if Drive is concerned about the quality, condition or nature of any such Product, it shall notify Merchant within ten (10) days of receipt of such Product.  Drive agrees to permit Merchant to inspect and/or retrieve any or all of the Products stored by Drive during normal business hours and upon twenty-four (24) hours' written notice, email is sufficient. The parties acknowledge and agree that Drive is not a reseller of the Products, does not hold title to the Products and bears no responsibility for the effectiveness, safety, applicability or use of the Products in any way.

    b) Hold and store Products in a commercially responsible manner in Drive's warehouse facilities pending fulfillment/shipment to Customers.

    c) Pick and pack orders and recheck orders for accuracy. Drive will be responsible for and will assume the cost of correcting all orders that are incorrectly packed or shipped, including all changes relating to re-packing and re-shipping such orders.

    d) Assemble the appropriate shipping carton(s) and/or envelope(s); insert the ordered Products(s); enclose packing list and/or Product literature, if any, tape seal, and complete shipping preparation. All items will be packaged in a commercially reasonable manner in accordance with mutually agreed upon Drive Fulfillment Customer Shipping & Receiving Standard Operating Procedures ("*SOP*").

    e) Print and affix shipping labels, including reference information to identify the shipped Product.

    f) Deliver all Products to the appropriate carrier (UPS, FedEx, etc. to be jointly optimized with Client over time based on cost and delivery experience) for shipment on the appropriate account number. Drive will employ commercially reasonable efforts to deliver the relevant Products to the appropriate carrier by the end of the same business day on which the order is shipped; otherwise, Drive will deliver the Products to the appropriate carrier on the next business day. In making this commitment, Drive expressly acknowledges and understands that Merchant's business fluctuates on a seasonal basis and agrees to deliver shipped orders to the appropriate carrier by no later than the next business day notwithstanding this seasonal variation.

    g) Timely process Product returns from Customers (primarily non-deliverable addresses), report such returns to Merchant, and comply with Merchant's reasonable instructions relating to such Product returns.

    h) Source report (a list of all shipments sent that day) will be available for Merchant review in Ship Station, DriveLine (WMS) or necessary format with columns showing "Date Shipped," "Order ID," and "Tracking Number." This information will be provided the day following shipment to equip Merchant with the information necessary to track shipments and ensure timely, effective service to Customers.

    i) Provide quarterly cycle count inventory reports.

    j) Maintain an alarm system in Drive's warehouse building that detects both fires and intrusions.

    k) Maintain the operation and accuracy of the inventory tracking systems and provide Merchant with notice of any outages or updates relating to either system.

    l) Receive orders from Merchant API (SKUbana).

    m) Drive shall perform all the services required by this Agreement in a commercially reasonable manner. Without limiting the foregoing, all Products shall be packaged and addressed properly and shall otherwise conform to the instructions received from Merchant related to receiving, repackaging, addressing, and shipping the Products.

3. **Compensation**.

    a) Drive's fees (the "**Service Fees**") for the services described herein will be as set forth on **Exhibit A** attached hereto and incorporated herein by reference. Additionally, Merchant shall reimburse Drive, as necessary, for the approved costs of product insurance, shipping, and any necessary packaging materials or other expenses incurred by Drive for the benefit of Merchant. Merchant shall be responsible to pay all applicable sales and similar taxes relating to the purchase, packaging, insurance, shipment and handling of the Products. Moreover, Merchant shall be responsible to pay all international tariffs, fees, taxes or other similar costs. The Service Fees pertaining to each Renewal Term (defined below), as applicable, shall be as agreed to by the parties and reflected in additional future exhibits, which shall, upon mutual agreement, automatically become attached hereto and incorporated herein.

    b) Drive shall invoice Merchant monthly for the Service Fees and any costs permitted herein. In the event Merchant requests services through a work order that are not explicitly addressed herein, Drive shall outline such services, along with their respective costs, in the relevant invoice(s). All invoices are governed by the terms of this Agreement. Notwithstanding the foregoing, the invoices may supply additional terms and conditions, and in the event of any conflict between the terms of an invoice and the terms hereof, the terms of this agreement shall govern. All Service Fees shall be paid by Merchant and received by Drive within thirty (30) days of Merchant's receipt of Drive's invoice. Any invoiced amount (plus any past late charges) which are not paid by

Merchant as provided herein shall be increased by a late charge equal to 1.5% for each month (or portion thereof), compounding monthly, in which such invoiced amount is not paid. Payments will be applied to late charges and collections costs first and then to any invoiced amount. Any Products in Drive's warehouse facilities shall be held by Drive as security for payment of all of Merchant's past due invoices and Merchant hereby grants to Drive a security interest solely in such Products for such purposes.

4. **Term; Termination**

The initial term of this Agreement shall be for a period of one (1) year from the date hereof (the "***Initial Term***"). Subsequent to the expiration of the Initial Term, this Agreement shall automatically renew for additional one-year terms (each, a "***Renewal Term***," and together with the Initial Term, the "***Term***") unless and until one party provides written notice to the other party not less than thirty (30) days prior to the expiration of the then-current Term of its intent not to renew this Agreement. If either party materially breaches any provision of this Agreement, and such breach is not cured within five (5) business days of written notice provided to the breaching party, then this Agreement may be terminated by the non-breaching party.

Without limiting the basis for any other claim of breach, the parties agree that Drive shall be in material breach of this Agreement if, within any one-month period:

1. The processing time for greater than five percent of inbound Merchant supplier shipments within SOP standards is more than three business days following the date of shipment receipt; or

2. The fulfillment time for greater than two percent of order shipments for which inventory is on-hand is more than two business days following the date of order receipt; or

3. The error rate is greater than one percent on pick, pack, and ship-to accuracy (e.g., an incorrect SKU/UPC or quantity is picked, improperly packed, or erroneously addressed). If any product needs to be re-worked by Drive due to Merchant vendor or supplier error (namely, that the product is not labeled with the correct barcode or SKU, or with a barcode/SKU that matches the order) these products will be excluded from the calculation of the 1% error rate.

(1, 2 and 3 above are each a "***Drive Performance Breach***").

<u>Provided</u>, <u>however</u>, that no Drive Performance Breach shall be deemed to exist to the extent that:

- The performance measure breach is directly attributable to one or more specific Merchant vendors' or suppliers' failure(s) to be in full compliance with any relevant provision of the SOP;
- A reasonably accurate Merchant forecast is not provided 60 days in advance, including anticipated marketing promotions and product launches.

Moreover, for avoidance of doubt, if any product ordered needs to be corrected in any respect by Drive due to Merchant vendor or supplier error the inbound and outbound orders containing these products will be excluded in determination of whether a Drive Performance Breach has occurred.

Without limiting the basis for any other claim of breach, the parties agree that Merchant shall be in material breach of this Agreement if:

- Merchant fails to timely pay any amounts due under this Agreement

- Merchant fails to maintain at least 90% of product shipments from Merchant's vendors or suppliers in substantial compliance with Drive's receiving SOPs measured forward from the time of notice by Drive of each non-conforming shipment.

Unless a dispute exists over any payment or non-payment arising hereunder, immediately upon termination of this Agreement, Drive shall permit Merchant to retrieve all Products stored by Drive and will cooperate fully in any instructions provided by the Merchant to ship or transport the Products, all at Merchant's sole cost and expense.  The obligations arising under Sections 3, 6, 7, 8, 10, 11, 12, 13 and 15 of this Agreement shall survive any termination of this Agreement.

5. **Non-Exclusivity**.
The parties agree that Drive IS NOT an exclusive provider with respect to the services contemplated by this agreement.

6. **Non-Disclosure; Intellectual Property and Other Proprietary Information**.
The parties acknowledge that in the course of Drive's provision of services hereunder, each party has or may become privy to proprietary information belonging to the other party.  Each party agrees not to use or to disclose any confidential or proprietary information or trade secrets of the other party, including information regarding the identity and relationships of customers, suppliers, retailers, distributors, employees or vendors; financial data, including pricing information and information regarding the compensation of employees and independent contractors; market expansion strategies; marketing and sales programs and data; and operations, technical and other manuals; except as may be permitted for the purposes of fulfilling this Agreement.  In particular, Merchant acknowledges that it will have access to certain proprietary information and other intellectual property, including without limitation, computer and computer-related software and hardware customized coding and codes belonging to Drive; and/or proprietary processes owned or licensed by Drive in connection with providing the services described herein. Merchant agrees that such proprietary information and intellectual property is and shall remain the sole property of Drive. Notwithstanding the foregoing, each party may disclose proprietary information to the extent that such disclosure is reasonably required in connection with or pursuant to (i) a subpoena or court order, or (ii) any investigation or audit by a governmental authority, including the Internal Revenue Service or (iii) as otherwise may be provided by law.  In all such cases, the disclosing party shall disclose such information only to the extent reasonably required to fulfill such purpose or legal requirement.  If any party bound hereby becomes legally compelled to disclose any such confidential information, such person shall promptly, if legally permitted to do so, notify the other party of such fact so that such party may seek an appropriate remedy to prevent such production, and request the person demanding such production allow the person a reasonable period of time to seek such remedy.

7. **Trademarks.** During the Term, Merchant grants to Drive permission to use the Merchant's trademarks and logos and other intellectual property ("Marks") solely for the purpose of performing its obligations under this Agreement and only as permitted by Merchant.  Any other use of the Marks shall be a violation of this Agreement and will constitute an infringement of the Marks.  Drive recognizes the great value of goodwill associated with the Marks and acknowledges that such goodwill belongs exclusively to and shall inure to the benefit of Merchant.  Drive shall use the Marks in the form provided to Drive, in accordance with any Merchant trademark usage policies, as may be provided to Drive in writing from time to time and in a manner that reflects the goodwill and quality reflected by the Marks.   Drive shall 1) not take any actions inconsistent with Merchant's ownership of the Marks; 2) not attack or assist any third party in attacking the Marks; 3) use proper symbols indicating the registered status of the Marks as provided by Merchant; 4) not attempt to register the

Marks; and 5) not adopt or use confusingly similar marks. Upon termination or expiration of this Agreement, any permission given to Drive for use of the Marks under this Section shall likewise end. Drive shall not register any domain names or create any social media accounts or user profiles that contain the Merchant Marks without Merchant's express written permission. To the extent such permission is granted, any and all rights in such domain names shall be assigned in full to Merchant. Drive will indemnify and hold harmless Merchant from any and all claims, losses, damages or other expenses (including attorney's fees) that arise or result from Drive's unauthorized use of the Marks.

8. **Non-Solicitation**. During the Term and continuing for two (2) years thereafter, each party agrees that it will not, directly or indirectly, (a) induce any employee of the other party to terminate or adversely alter his or her relationship with such party, (b) solicit the business of any client or customer of the other party or otherwise provide any services to or conduct any business with any client or customer of the other party, in any manner that is competitive with the other party.

9. **Independent Contractor**. In rendering services hereunder, Drive shall be acting as an independent contractor and not as an employee, agent or reseller of Merchant. As an independent contractor, Drive shall have no authority, express or implied, to commit or obligate Merchant in any manner whatsoever. Except as expressly provided in this Agreement, Drive shall provide all equipment and materials necessary to perform the services in accordance with this Agreement and shall have the right to perform the services in the manner and using the means Drive deems necessary and appropriate. Drive shall be responsible for the payment of all federal, state or local taxes payable with respect to all amounts paid to Drive under this Agreement; *provided, however*, that if Merchant is determined to be liable for collection and/or remittance of any such taxes, Drive shall immediately reimburse Merchant for all such tax payments made by Merchant. Nothing contained in this Agreement shall be construed or applied to create a partnership between Merchant and Drive.

10. **Insurance.** Drive shall maintain policies of insurance in the following types and minimum amounts for the duration of the Agreement: (a) workmen's compensation – statutory limits for jurisdictions in which work is to be performed; (b) general liability including premises, operations, independent contractors, advertising injury and contractual liability $1,000,000 per occurrence; (c) owned and nonowned automotive liability – bodily injury $1,000,000 per person and $1,000,000 per occurrence; and (d) data protection liability of $1,000,000. Drive waives any rights of subrogation that Drive, or its insurer(s) may have against Merchant. All policies must provide primary non-contributory coverage. All policies will be issued by an insurer with an AM Best rating of A- or better. Merchant and any affiliate as required by Merchant must be named as an additional insured under the foregoing policies and the acts of Drive contrary to policy provisions will not be attributable to Merchant. Drive will furnish to Merchant a Certificate of Insurance completed by its insurance carrier(s) certifying that the required insurance coverages are in effect and will not be voided, canceled or materially changed until thirty (30) days after prior written notice has been delivered to Merchant. The certificate must set forth the amount of each coverage, policy number, date of expiration and Merchant as an additional insured. The purchase of such insurance coverage or the furnishing of a certificate will not be a satisfaction of Drive's liability under this Agreement, or in any way modify Drive's obligation to indemnify Merchant. Merchant shall maintain policies of insurance in the following types and minimum amounts for the duration of the Agreement: (a) products liability $1,000,000 per occurrence; and (b) general liability including premises, operations, independent contractors, advertising injury and contractual liability $1,000,000 per occurrence. Merchant waives any rights of subrogation that Merchant, or its insurer(s) may have against Drive. All policies must provide primary

non-contributory coverage.  All policies will be issued by an insurer with an AM Best rating of A- or better.  Drive and any affiliate as required by Drive must be named as an additional insured under the foregoing policies and the acts of Merchant contrary to policy provisions will not be attributable to Drive.  Merchant will furnish to Drive a Certificate of Insurance completed by its insurance carrier(s) certifying that the required insurance coverages are in effect and will not be voided, canceled or materially changed until thirty (30) days after prior written notice has been delivered to Drive. The certificate must set forth the amount of each coverage, policy number, date of expiration and Drive as an additional insured.  The purchase of such insurance coverage or the furnishing of a certificate will not be a satisfaction of Merchant's liability under this Agreement, or in any way modify Merchant's obligation to indemnify Drive.

11. **Representations, Warranties and Covenants**.

   a) Drive represents, warrants and covenants that: (i) it is a limited liability company duly organized, validly existing and in good standing under the laws of Utah; (ii) it has the lawful right, power, authority and capacity to enter into this Agreement; (iii) the person signing this Agreement is authorized to do so; (iv) neither the execution nor the performance of this Agreement shall constitute a violation of or interfere with Drive's obligations to any third party; and (v) it currently complies with and will comply with all federal, state and local laws, statutes and regulations with respect to the subject matter of the Service Agreement services to be provided hereunder.

   b) Merchant represents, warrants and covenants that: (i) it is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware; (ii) it has the lawful right, power, authority and capacity to enter into this Agreement; (iii) the person signing this Agreement is authorized to do so; (iv) neither the execution nor the performance of this Agreement shall constitute a violation of or interfere with Merchant's obligations to any third party; (v) it currently complies with and will comply with all international, federal, state and local laws, statutes and regulations with respect to the subject matter of this Agreement, including tax and tariff laws and requirements, and assumes all risks related thereto; (vi) for any Products shipped to a Customer outside of the United States of America, such Products are authorized for export to such jurisdictions, and all applicable permits have been obtained; (vii) it owns or has adequate, valid and enforceable rights to use the intellectual property associated with the Products, free and clear of all encumbrances of any kind; (viii) to the best of knowledge its prior and current use of the intellectual property associated with the Products has not and does not infringe, violate, dilute or misappropriate the intellectual property of any person or entity and there are no claims pending or threatened by any person or entity with respect to the ownership, validity, enforceability, effectiveness or use of the intellectual property associated with the Products; and (ix) to the best of knowledge its Products do not contain hazardous or toxic materials, and Merchant shall not at any time place into Drive's possession for shipment any hazardous or toxic materials.

   c) NEITHER PARTY MAKES ANY REPRESENTATION OR WARRANTY EXCEPT THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. EACH PARTY DISCLAIMS ALL OTHER WARRANTIES AND CONDITIONS, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF TITLE, NON-INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.

12. **Limitation of Liability**. EACH PARTY'S MAXIMUM LIABILITY TO THE OTHER UNDER THIS AGREEMENT, AND EACH PARTY'S EXCLUSIVE REMEDY FOR ANY CAUSE WHATSOEVER, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT OR IN TORT, INCLUDING NEGLIGENCE, WILL BE LIMITED TO THE RECOVERY OF ACTUAL DAMAGES.  IN ADDITION, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR LOST PROFITS OR SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, WHETHER BASED IN CONTRACT OR TORT (INCLUDING NEGLIGENCE, STRICT LIABILITY OR OTHERWISE), AND WHETHER OR NOT ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. **Indemnification**.

    a) <u>By Drive</u>
    Drive shall indemnify, hold harmless and defend Merchant and each person or entity that is an officer, director, member, manager, employee, affiliate or agent of Merchant from and against any and all losses, claims, damages, liabilities, whether joint or several, expenses (including reasonable legal outside fees and expenses), judgments, fines and other amounts paid in settlement, incurred or suffered (collectively, "*Losses*") by any such person or entity arising out of or in connection with (i) the inaccuracy of any representation or warranty made by Drive hereunder, (ii) the breach of this Agreement by Drive, or (iii) any negligent act or omission or willful misconduct or recklessness by Drive or its employees or agents in connection with the performance by Drive or its employees or agents hereunder, provided such negligent act or omission was not done or omitted at the direction of Merchant.

    b) <u>By Merchant</u>
    Merchant shall indemnify, hold harmless and defend Drive and each person or entity that is an officer, director, employee, affiliate or agent of Drive from and against any and all Losses by any such person or entity arising out of or in connection with

    i. the inaccuracy of any representation or warranty made by Merchant hereunder,

    ii. the breach of this Agreement by Merchant

    iii. any negligent act or omission by Merchant or its employees or agents in connection with the performance by Merchant or its employees or agents hereunder, provided such negligent act or omission was not done or omitted at the direction of Drive

    iv. any unpaid transportation charges in connection with Products that Merchant caused to be shipped to Drive for fulfillment or that Merchant caused Drive to ship out to third parties, including Customers.

    v. claims brought against Drive by third parties arising from or related to Product performance or liability, including without limitation, the death of, or bodily injury to, any person, or property damage, on account of the use of any Product, excluding any claims exclusively and directly attributable to any negligent act or omission by Drive in packaging or transporting the product.

    vi. claims brought against Drive by third parties arising from or related to the intellectual property associated with the Products

vii. claims brought against Drive by third parties arising from or related to any hazardous or toxic materials contained in the Products

viii. the imposition of any taxes, international tariffs, fees and other costs related to the shipment or export of the Products.

14. **Risk of Loss**. Merchant acknowledges and agrees that it has inspected the warehouse and other space in which Drive shall receive, store and ship the Products and reviewed Drive's policies and procedures related thereto, and it is satisfied that Drive is taking the proper precautions to maintain the integrity of and protecting the Products from fire, theft, damage, shrinkage and all other kinds of loss. As a result thereof, Merchant hereby retains risk of loss or other damage of any kind to the Products while in the custody of Drive, while the Products are in transit to Drive or Customers, and after, if applicable, the return of the Products to Drive's warehouse; provided that, Drive shall continue to exercise a commercially reasonable level of care and the same or greater level of precautions as it has taken at the time of entry into this Agreement. Furthermore, notwithstanding the foregoing, Drive shall bear the responsibility for any loss or other damage to the Products that is solely and directly attributable to the negligence, willful misconduct or recklessness of Drive. If any loss is solely and directly attributable to the negligence, willful misconduct or recklessness of Drive, Drive will reimburse Merchant at the replacement cost value of the Product or damaged part thereof, and any limit of liability set forth in Section 12 shall not apply. Drive assumes no responsibility to provide for or monitor insurance coverage for the Products or other Merchant interests.

15. **Miscellaneous**. All notices, consents, requests, instructions, approvals or other communications provided for herein shall be in writing and delivered by personal delivery, overnight courier, U.S. mail, or email (with delivery verification) addressed to the receiving party at the address set forth herein. All such communications shall be effective when received.

**MERCHANT**:
The Funtrepreneur, Inc.
_____
Street Address
100 Cummings Center, Suite 125G
_____
City, State, Zip
Beverly, MA 01915
_____
Ashley Judge
ashleyjudge@alwaysfits.com

With a copy (which shall not constitute notice) to:

Brann & Isaacson
184 Main Street
Lewiston, ME 04243
Attention: Stacy O. Stitham
Email: sstitham@brannlaw.com

**DRIVE**:

Drive Fulfillment, LLC

1226 South 630 East

American Fork, Utah 84003

Attn: Alex Beck

With a copy (which shall not constitute notice) to:

Hansen Black Anderson Ashcraft PLLC

3051 W. Maple Loop Drive

Suite 325

Lehi, Utah 84043

Attention: Jonathan K. Hansen

Email: jhansen@hbaa.law

Any party may change the address set forth above by notice to each other party given as provided herein.

a) No failure to exercise, delay in exercising or single or partial exercise of any right, power or remedy by any party hereto shall constitute a waiver thereof or shall preclude any other or further exercise of the same or any other right, power or remedy.

b) This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all other agreements, written or oral, between the parties.

c) This Agreement shall not be amended or modified except by written document signed by both parties.

d) This Agreement shall be governed by the laws of the State of Utah without regard to its conflict of law rules, and the parties hereto consent to personal jurisdiction in the federal courts located in the state of Utah.

e) Drive and Merchant agree that the prevailing party in any action relating to or arising out of this Agreement will be awarded its reasonable attorneys' fees and other costs incurred as a result of such a proceeding.

f) This Agreement shall be binding on the parties and their respective heirs, successors and assigns.

g) This Agreement may be signed in counterparts and by signature sent by DocuSign or similar electronic signature, each of which shall be deemed to be an original, and all of which together shall constitute one and the same binding document.

h) In any action requiring construction of this Agreement or its provisions by a court of competent jurisdiction, this Agreement or such provision shall be applied in the broadest manner possible within the scope of its express language such that it would be valid, legal and enforceable.  If any provision of this Agreement is construed to be invalid, illegal or unenforceable, then the remaining provisions hereof shall not be affected thereby and shall be enforceable without regard thereto.

i) Each party agrees to execute and deliver such further documents and to reasonably cooperate as may be necessary to implement and give effect to the provisions contained herein.

j) In the event the performance of this Agreement or any obligation hereunder, with the exception of Merchant's outstanding payment obligations to Drive, is either directly or indirectly prevented, restricted, or interfered with by reason of fire, flood, earthquake or like acts of God, or any other circumstances beyond the reasonable control and without the fault or negligence of the party affected, the party affected, upon giving prompt notice to the other party, shall be excused from such performance on a day-to-day basis to the extent of such prevention, restriction, or interference (and the other party shall likewise be excused from performance of its obligations on a day-to-day basis until the delay, restriction or interference has

ceased); provided however, that the party so affected shall use diligent efforts to avoid or remove such causes of non-performance and both parties shall proceed whenever such causes are removed or cease.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective for all purposes as of the date first written above.

**DRIVE:**

DRIVE

By: _____Clay McMillan_____ (DocuSigned by: 3391752B3B34480...)

Name: _____

Title: _____General Manager_____

**MERCHANT:**

The Entrepreneur, Inc.

By: _____Ashley Judge_____ (DocuSigned by: 8C7EB6BED0804AC...)

Name: _____Ashley Judge_____

Title: _____CEO_____   CEO

*[Signature page to Fulfillment Services Agreement]*

